NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
————————

Nos. 03-3758 and 03-4524
————————

JONETHAN FORD; GARY THOMPSON; JAMES TARVER;
KARL REEVES; AKEEM MUTOMBO; ROBERT EDWARDS

v.

MERCER COUNTY CORRECTIONAL CENTER; DENNIS CUNNINGHAM;
ROBERT D. PRUNETTI; JOHN FARMER; J. MCCALL;
SWANSON COMMISSARY COMPANY; PREVIOUS COMMISSARY COMPANY;
WATER MANAGEMENT COMPANY; LINDA ROGERS; PAULA PULGAR;
PATRICIA HUTCHINSON, DR.

Akeem Mutombo,
Appellant
————————————

JONETHAN FORD; GARY THOMPSON; JAMES TARVER;
KARL REEVES; AKEEM MUTOMBO; ROBERT EDWARDS

v.

MERCER COUNTY CORRECTIONAL CENTER; DENNIS CUNNINGHAM;
ROBERT D. PRUNETTI; JOHN FARMER; J. MCCALL;
SWANSON COMMISSARY COMPANY; PREVIOUS COMMISSARY COMPANY;
WATER MANAGEMENT COMPANY; LINDA ROGERS; PAULA PULGAR;
PATRICIA HUTCHINSON, DR.

Akeem Mutombo,
Appellant
————————

Appeals from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-cv-01623)
District Judge: Honorable Freda L. Wolfson

————————

Argued January 25, 2006

Before:  RENDELL and STAPLETON, Circuit Judges
and GILES*, District Judge

(Filed March 22, 2006)

————————


David R. Fine     [ARGUED]
Maria G. Macus-Bryan
Kirpatrick & Lockhart
Nicholson Graham
17 North Second Street
18th Floor
Harrisburg, PA 17101
 *Counsel for Appellant*


Sarah G. Crowley     [ARGUED]
Kimberley M. Wilson
Office of County Counsel
County of Mercer
640 South Broad Street
McDade Administration Building
Trenton, NJ 08650
 *Counsel for Appellee*

—————————————

* Honorable James T. Giles, Judge of the United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

2

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

This is an appeal from the District Court's grant of summary judgment against

Akeem Mutombo on his § 1983 claims arising out of the prison conditions he experienced

as a pretrial detainee and as an inmate incarcerated at Mercer County Correctional Center

("MCCC").  In his *pro se* complaint,[1] Mutombo alleged the following conditions which

violated his constitutional rights:  (1) poor air quality, including the presence of airborne

asbestos, the failure of MCCC to clean its air filters and ducts, and the allowance of

cigarette smoking at MCCC, exposing him to second-hand smoke; (2) overcrowded and

unsanitary conditions; (3) polluted and unsanitary drinking water; (4) failure to provide

him with access to legal materials; (5) failure to provide him with a copy of the grievance

form he completed; and (6) retaliation.  We will affirm the District Court's grant of

summary judgment.

_____

[1] Also joining in the original complaint were fellow inmates Jonethan Ford, Gary
Thompson, James Tarver, Karl Reeves, and Robert Edwards.  Ford, Tarver, Reeves, and
Edwards were dismissed from the action by order of the District Court on October 20,
2000.  On February 15, 2001, the District Court also entered an order dismissing
Thompson for lack of prosecution.  On March 26, 2002, the District Court granted
Mutombo's motion for appointment of *pro bono* counsel.  MCCC moved for summary
judgment on July 1, 2003.

I.

Mutombo was held at MCCC as a pretrial detainee from August 20, 1999 until November 17, 1999, and then as a convicted inmate from November 18, 1999 through May 9, 2000.

Mutombo has submitted a lengthy affidavit which, taken together with his complaint, constitutes the major portion of the evidence presented.  In these documents, he complains of his exposure to second-hand smoke, poor air quality and lack of ventilation.  He avers that he suffered various health problems as a result,[2] but provides no record of treatment, or medical evidence regarding these conditions.  He contends that the air filters were not changed regularly and that there was a layer of dust on the light fixtures and air filters.  He avers that poor water quality caused him stomach irritation and bowel trouble.  However, he provides no quantitative or qualitative measure of these facts, nor ties them to any specific health condition for which he has received treatment.

Mutombo's sole medical evidence consists of his averred account of two visits to see a physician or nurse.  On December 7, 2000, Mutombo complained of skin discoloration and was examined by Patricia Hutchinson, who diagnosed the condition as a fungus.  On March 3, 2000, Mutombo complained of stomach problems and was again

---

[2]At various points in his affidavit and complaint, Mutombo claims to have experienced shortness of breath, diminished lung capacity, production of a black substance in his lungs, eye irritation, light headedness, forgetfulness, a general lack of energy, and headaches purportedly due to second-hand smoke exposure.

examined by Ms. Hutchinson, who prescribed him an antibiotic and gave him a dandruff shampoo to help with his skin condition.

Beyond his affidavits, the only evidence Mutombo produced showed that MCCC's prison population had slightly exceeded its mandated capacity over a relatively brief period in 1999 and had at one point permitted cigarettes to be sold from its commissary – a practice which has since ceased.  Mutombo also submitted several affidavits completed by his fellow prisoners attesting to various physical harms allegedly resulting from their incarceration.  The prisoners complain uniformly of skin discolorations and abnormal growths on their hands, attributing the conditions to contaminated water.  None of the prisoners has submitted medical records in support of his claimed conditions.

II.

A section 1983 claim provides redress for the infringement of constitutional rights under color of law.  42 U.S.C. § 1983.  The constitutional rights at issue in this case are those protected by the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment's prohibition on cruel and unusual punishment.  Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, which prohibits them from being "punished prior to an adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Convicted prisoners, on the other hand, are protected from "cruel and unusual punishments" by the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).

5

In order to determine whether the challenged conditions of Mutombo's pre-trial

confinement amounted to punishment without due process of law,

> [a] court must decide whether the disability is imposed for the purpose of
> punishment or whether it is but an incident of some other legitimate
> governmental purpose.  Absent a showing of an expressed intent to punish on
> the part of the detention facility officials, that determination generally will turn
> on whether [it has] an alternative purpose ... and whether it appears excessive
> in relation to [that] purpose....  Thus, if a particular condition or restriction of
> pretrial detention is reasonably related to a legitimate governmental objective,
> it does not, without more, amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate goal--if it is arbitrary or
> purposeless--a court may permissibly infer that the purpose of the
> governmental action is punishment that may not constitutionally be inflicted
> upon detainees qua detainees.

*Wolfish*, 441 U.S. at 538-39 (citations, brackets, and internal quotations omitted).

According to the Supreme Court, "confining a given number of people in a given

amount of space in such a manner as to cause them to endure genuine privations and

hardship over an extended period of time might raise serious questions under the Due

Process Clause as to whether those conditions amounted to punishment." *Id.* at 542.  Our

inquiry into whether given conditions constitute "punishment" must therefore consider the

totality of circumstances within an institution.  *Hubbard*, 399 F.3d at 160.

With respect to the period of time after Mutombo's conviction, "the treatment a

prisoner receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

The Eighth Amendment prohibits punishment inconsistent with "evolving standards of

decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97,

102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  Conditions of prison

confinement violate the Eighth Amendment only if they "deprive inmates of the minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  Prison officials must

"take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*,

468 U.S. 517, 526-27 (1984).  A prison official's "deliberate indifference" to a substantial

risk of serious harm to an inmate violates the Eighth Amendment.  *Farmer v. Brennan*,

511 U.S. 825, 828 (1994).  As the Court stated in *DeShaney v. Winnebago County Dept.*

*of Social Services,* 489 U.S. 189, 199-200 (1989),

> when the State takes a person into its custody and holds him there against his
> will, the Constitution imposes upon it a corresponding duty to assume some
> responsibility for his safety and general well being....  The rationale for this
> principle is simple enough: when the State by the affirmative exercise of its
> power so restrains an individual's liberty that it renders him unable to care for
> himself, and at the same time fails to provide for his basic human needs– *e.g.,*
> food, clothing, shelter, medical care, and reasonable safety– it transgresses the
> substantive limits on state action set by the Eighth Amendment....

In *Helling*, the Supreme Court determined that a cause of action exists under the

Eighth Amendment when a prisoner alleges that prison officials have exposed him, with

deliberate indifference, to levels of environmental tobacco smoke (ETS) that pose an

unreasonable risk of harm to his future health.  *Helling*, 509 U.S. at 35;  *Atkinson v.*

*Taylor*, 316 F.3d 257, 262 (3d Cir. 2003).

The Court established a two-part test that a plaintiff must meet to state a valid

claim under the Eighth Amendment.  First, the prisoner must show that he himself is

7

being exposed to unreasonably high levels of ETS.  *Id.* at 35.  Second, he must show that

the prison officials were deliberately indifferent to the serious risk of harm.  *Id.* at 36.

In *Helling*, the Supreme Court rejected the notion that, in order to prove his Eighth

Amendment claim, a prisoner must prove that he is currently suffering serious medical

problems (or currently exhibiting symptoms) caused by exposure to ETS.  *Id.* at 33

(observing, by way of example, that an inmate could successfully bring an action to

redress demonstrably unsafe drinking water without waiting for an attack of dysentery).

The Court observed that the Eighth Amendment protects prisoners against future harm, as

well as present harm.  *Id.*  The Eighth Amendment "requires that inmates be furnished

with the basic human needs, one of which is reasonable safety."  *Id.* (internal quotation

omitted).

III.

In light of these requirements of the Fourteenth and Eighth Amendments, the

question before us is whether Mutombo has presented evidence that the conditions at

MCCC constituted punishment or an unreasonable danger to his health.  Mutombo's

allegations must be taken as true, and when his assertions conflict with those of MCCC,

the movant, the former must receive "the benefit of the doubt."  *Goodman*, 534 F.2d at

573.  Nevertheless, if Mutombo has failed to "make a showing sufficient to establish the

existence of an element essential" to his case, and on which he bears the burden of proof

at trial, we must affirm the entry of summary judgment.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  While Mutombo may rely solely on affidavits, he must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  A mere "scintilla" of evidence is insufficient to defeat a motion for summary judgment. *Id.* at 252.

To survive summary judgment on his pre-conviction claims, Mutombo must present evidence upon the totality of which a reasonable jury could find that the conditions at MCCC constituted punishment, *i.e.*, were not related to the legitimate governmental interest in pretrial detention.  To survive summary judgment on his post-conviction claims, Mutombo must provide such evidence upon which a reasonable jury could find that, with deliberate indifference, he was involuntarily exposed to levels of ETS or other harm that, in fact, harmed his then-present health, or posed an unreasonable risk of serious damage to his future health. *Helling*, 509 U.S. at 35.  In the course of proving the Eighth Amendment claim, he must also establish that it is contrary to current standards of decency for anyone to be so exposed against his will – that is, that it is a risk that today's society chooses not to tolerate. *Id.* at 35-36.

In his plea for relief from the District Court's grant of summary judgment, Mutombo has argued that summary judgment should not be granted because, to the extent that Mutombo has failed to meet his burden of production, it is only as a result of the District Court's refusal to appoint an expert witness pursuant to Fed. R. Evid. 706.

9

However, we find that the District Court did not abuse its discretion in refusing to appoint an independent expert pursuant to Rule 706.

Rule 706 affords the trial judge broad discretion to appoint an independent expert answerable to the court, whether *sua sponte* or on the motion of a party.  The policy behind the rule is to promote the jury's factfinding ability.  *See* 29 Charles Allen Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6304 (1997).  "The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance." *Id*.  A trial judge does not abuse his discretion in declining to appoint an independent expert solely to benefit a party who has otherwise failed to gather such evidence as would suffice to overcome summary judgment.  *Cf. Ledford v. Sullivan*, 105 F.3d 354, 359-60 (7th Cir. 1997) (finding jury could comprehend whether plaintiff's medical needs were "serious" without the aid of a court-appointed expert; observing, "the symptoms which [Plaintiff] experienced were not beyond a lay person's grasp."); *but see* Wright & Gold § 6304 (district court may properly appoint an expert witness where plaintiff is indigent and expert is needed by trier of fact to understand complex, technical, or esoteric subject ); *McKinney v. Anderson*, 924 F.2d 1500, 1510 (9th Cir. 1991); *Webster v. Sowders*, 846 F.2d 1032, 1038 (6th Cir. 1988); *United States Marshals Service v. Means*, 741 F.2d 1053, 1058 (8th Cir. 1984)).  Here, the District Court denied Mutombo's motion for a court-appointed medical expert, finding that the medical issues

10

presented were not so complex as to require an independent court-appointed expert.  On these facts, we will not second-guess the District Court's judgment as to its own need for an independent expert.

Here, Mutombo has not provided sufficient evidence such that a reasonable jury could conclude he was exposed to an unreasonable risk of harm or that the conditions at MCCC were punitive.   With respect to his allegations regarding overcrowded and unsanitary conditions, failures by prison officials to provide legal materials and receipts for grievance forms, unsanitary drinking water, and retaliation, Mutombo has not produced evidence upon which a reasonable jury could find a constitutional violation had occurred.  That the average populations at MCCC exceeded the permissible maximum by a small number of persons over a relatively short period of time does not rise to overpopulation levels violating the Eighth and Fourteenth Amendments.  That Mutombo became ill after consuming water, without any other evidence, cannot alone establish that he had, or that the water caused, a serious illness.   Further, Mutombo has articulated no basis for finding that MCCC's failure to give him a receipt copy of grievance forms he submitted violated his constitutional rights.

With respect to Mutombo's air quality claims, Mutombo has not submitted the type of evidence upon which a jury could reasonably return a verdict in his favor.  Mutombo's statements do not describe the conditions of his exposure in a fashion that could lead to a reasonable jury finding that he was exposed to an unreasonable and indecent risk of harm

11

or that the harm was inflicted upon him as a form of punishment.  *See Helling*, 509 U.S. at 36 (prisoner must show that the risk is so grave it violates contemporary standards of decency to expose *anyone* to it unwillingly); *Wolfish*, 441 U.S. at 540 n.23 (courts should defer to government's interest in operating pretrial detention institutions in a manageable fashion absent substantial contrary evidence in the record).  His allegations are general in nature and provide few of the details which a fact-finder would require.  Absent medical, scientific, or other quantitative and qualitative evidence of causation and harm, a jury could only speculate as to the ultimate issues needed to be proved at trial.  In other words, Mutombo has not presented facts upon which a reasonable jury could find that he was subjected to an unreasonable, indecent, and uncivilized risk of harm in violation of the Eighth Amendment or that the conditions at MCCC constituted punishment without trial in violation of the Fourteenth Amendment's requirement of due process.

IV.

For the foregoing reasons, we find that there is no genuine issue of material fact and will affirm the District Court's grant of summary judgment.

_____

12